[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13233
Non-Argument Calendar

_____

D.C. Docket No. 0:95-cr-06033-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN D. EDWARDS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 14, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Defendant Kevin D. Edwards appeals the district court's revocation of his supervised release pursuant to 18 U.S.C. § 3583. After review, we affirm.

## I.    BACKGROUND

### A.    Conviction and Sentence

In 1995, Edwards pled guilty to possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Edwards received a 175-month sentence, which was reduced to time served after his 18 U.S.C. § 3582(c)(2) motion was granted in 2008.

### B.    2011 Petition for Revocation

On March 31, 2008, Edwards was released and began his term of supervised release. As a mandatory condition of supervised release, inter alia, Edwards was prohibited from committing "another federal, state, or local crime" and from "illegally possess[ing] a controlled substance."

On October 28, 2011, Defendant Edwards and his cousin, Roger Brown, were arrested at Brown's apartment-residence in Broward County on drug charges.

On December 7, 2011, Probation Officer Dedra Pratt filed a petition alleging that Defendant Edwards had violated the conditions of his supervised release by violating the Florida laws cited in these state criminal charges: (1) possession of cannabis, in violation of Florida Statute § 893.03(1) (Violation 1); delivery of cannabis, in violation of Florida Statute § 893.03(1)(c)(7) (Violation 2); and (3)

possession of drug paraphernalia in violation of Florida Statute § 893.147(1) (Violation 3).[1]  Later, a superseding petition was filed adding federal possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Violation 4), and the district court dismissed Violation 2.

## C.    Magistrate Judge's Evidentiary Hearing

Because Defendant Edwards challenges the sufficiency of the evidence to revoke his probation, we detail what happened  at the evidentiary hearing before the magistrate judge.

Detective Jason Rotella of the Broward County Sheriff's Office testified about the investigation and events leading up to Defendant Edwards's October 28, 2011 arrest.  A week earlier, a confidential informant reported the presence of narcotics activity and an AK-47 in Roger Brown's residence.  The confidential informant accompanied an undercover officer to Roger Brown's residence, where they purchased marijuana from Brown.  Over the next few days, Detective Rotella surveilled Brown's residence and saw several other individuals walk to Brown's door, engage in a brief exchange and then quickly depart.  At this point, Defendant Edwards was not a target of Detective Rotella's investigation.

Detective Rotella obtained a warrant to search Brown's apartment-residence, which was executed on October 28, 2011.  At approximately 5:00 p.m., Rotella

---

[1]At the time of the revocation petition, the marijuana possession charge remained pending, but the other two charges had been disposed of as "No Information."

3

and the S.W.A.T. team arrived at Brown's residence, which other officers had been surveilling for approximately ten minutes.   When Rotella arrived, Brown and another man were standing outside the apartment building in the parking area.  As soon as the S.W.A.T. team truck pulled up, Brown and the other individual walked briskly toward the rear of the building.  Rotella notified police units placed in the perimeter around the building, and both men were detained.  A deadbolt key fitting the apartment was found on Brown.

At the same time, the S.W.A.T. team used a public address ("PA") device affixed to the truck to instruct anyone inside the residence to exit with their hands up.  The PA device's volume was estimated to be roughly equivalent to a police siren, and the loud instructions to exit the building were repeated over and over again for ten minutes.  One child exited a courtyard area of the apartment building and was coaxed by police to come to the truck for safety.  No other children were seen at the residence.  Additionally, during the twenty minutes that elapsed from the beginning of police surveillance to the breaching of the apartment door, no one reported seeing anyone enter or exit the building.

After ten minutes, the S.W.A.T. team approached the front door of Brown's residence and found it locked.  The S.W.A.T. team breached the front door with a bar and hammer.  Upon entry, the S.W.A.T. team observed Defendant Edwards standing in the living room along with "copious amounts of marijuana and

4

paraphernalia." Specifically, in plain view in the living room were approximately two pounds of marijuana on the coffee table, numerous plastic baggies, some empty and some containing marijuana, and scissors. Marijuana stems and seeds were strewn about the coffee table and a scale with marijuana residue was found in the kitchen. Detective Rotella said that it appeared the marijuana in the living room was being processed and packaged for sale. Detective Rotella took photographs of the marijuana and paraphernalia, which were entered into evidence.

Defendant Edwards was the only person found inside the residence. No marijuana was found on Defendant Edwards, but he was carrying approximately $474 in cash. No vehicle belonging to Defendant Edwards was observed in the vicinity of the building. Rotella smelled fresh marijuana as soon as he walked to the threshold of the door. Rotella described the smell as pungent and said that anyone who went into the residence would have smelled it. Both Defendant Edwards and Brown were arrested.

Defendant Edwards did not testify at the hearing, but he was able to get his version of what happened before the magistrate judge through the testimony of Probation Officer Pratt. Probation Officer Pratt testified that, after the arrest, she spoke with Defendant Edwards twice. Both times, Defendant Edwards denied being involved in selling drugs. Rather, Defendant Edwards told Pratt that: (1) he was at his cousin Brown's apartment to drop off Brown's children, whom he had

been babysitting; (2) he ran inside Brown's apartment to use the bathroom; (3) when he came out, he was met by police bursting into the residence; (4) he did not see drugs in Brown's apartment, as he rushed straight to the bathroom; and (5) he earned the $491 found in his pocket at work. Pratt testified that Defendant Edwards worked for his brother's construction company on an as-needed basis and earned approximately $950 a month.

Pratt stated that she visited Edwards at his own home on the morning of October 28, 2011. Pratt asked Edwards why he was not at work, and Edwards explained that he was not called in to work that day. Pratt saw three small children in the home. Edwards said he was babysitting for his cousin. Pratt had seen Roger Brown at Edwards's home twice before and had spoken to Brown one time when she called Edwards on his cell phone.

Over the government's objection, Defendant Edwards introduced two sworn statements by Brown. Brown's November 23, 2011 written statement, given to Probation Officer Pratt, averred that: (1) Edwards babysat for Brown's children for a few hours on the day of the arrest and then dropped them off at Brown's home; (2) Edwards had no knowledge of the marijuana in Brown's apartment; (3) Edwards's keys, tested by police, did not open Brown's door; and (4) Edwards was in Brown's home for only three minutes before the police entered. Brown's January 9, 2012 statement, given to Edwards's criminal attorney in the state case,

indicated that: (1) Defendant Edwards was at Brown's home to drop off Brown's child and another cousin; (2) knew nothing about the marijuana; (3) asked to use the bathroom; and (4) was exiting the bathroom when the police broke through the door.[2]

## D.    Magistrate Judge's Report and Recommendation

In a report ("R&R"), the magistrate judge found that Defendant Edwards violated his supervised release by committing additional crimes and recommended revocation.  Specifically, the magistrate judge found that the government proved by a preponderance of the evidence "that Defendant constructively possessed the marijuana and drug paraphernalia that was in plain view in Brown's living room on October 28, 2011."  The magistrate judge found that Detective Rotella's testimony was credible and that the statements of Defendant Edwards and his cousin Brown about Edwards' actions on October 28, 2011 were not believable "when juxtaposed against the facts established through Det. Rotella's testimony and the photographic evidence."

Based on the photographic evidence and Detective Rotella's testimony, the magistrate judge found that: (1) Defendant Edwards was alone in Brown's locked

---

[2]Although Defendant Edwards called Brown as a witness, Brown invoked his Fifth Amendment right against self-incrimination.  The magistrate judge ruled that Brown, by invoking the privilege, was rendered unavailable for purposes of the hearsay rules and allowed Defendant Edwards, over the government's objection, to introduce the January 9, 2012 sworn statement by Brown.

residence for more than twenty minutes; (2) the smell of marijuana permeated the residence; (3) marijuana and drug paraphernalia were scattered around the living room in which Edwards was found by police; and (4) Edwards was not just a visitor to Brown's home, but was given "unrestricted access to the interior of the house by its owner and had the ability to control the contraband that was in plain view in the living room."

In discrediting Defendant Edwards's statements to Probation Officer Pratt, the magistrate Judge noted that: (1) Edwards was not observed arriving at Brown's residence and his car was not seen there; (2) although Edwards claimed to be babysitting Brown's children, only one child was found on the premises; (3) while Edwards said he was at Brown's residence "only momentarily before police burst in," no one was seen entering the residence during the twenty minutes of surveillance before the police entered; and (4) "significantly," although Edwards said he did not see the marijuana in Brown's home, "marijuana and paraphernalia was literally strewn about the furniture and the floor, and the smell of the marijuana were pungent throughout the house."

Likewise, the magistrate judge discredited both of Brown's statements that Defendant Edwards was in the residence for only a few minutes to drop off the children and use the bathroom. The magistrate judge found that Brown could not

8

have known what happened inside his home because he was outside his home in the ten minutes leading up to the S.W.A.T. truck's arrival, at which point he fled.

## E.    District Court's Final Revocation Hearing

At a final revocation hearing, and over Edwards's objections, the district court adopted the R&R as to Violations 1 and 3 (Violation 2 having been dismissed).

Because Violation 4 was added after the evidentiary hearing, the parties stipulated to using the transcript of the earlier evidentiary hearing. The district court then found by a preponderance of the evidence that Defendant Edwards possessed the marijuana with intent to distribute. The district court emphasized that Edwards was found in possession of a large amount of marijuana in the living room, and items found near the marijuana (scissors and multiple baggies) typically were used for distribution. The district court reviewed the magistrate judge's findings as to the circumstances in which Edwards was found in the residence. The district court stressed that Edwards was present in the residence for twenty minutes before the S.W.A.T. team breached the door and that no one entered or left the residence during that twenty-minute period. The district court stated that "[t]hose are the salient facts and indicia that I would rely on" in finding Defendant Edwards possessed the marijuana with intent to distribute. The district court found

"no reason to disagree" with the magistrate judge's rejection of Defendant Edwards's evidence that he was a mere momentary visitor at Brown's residence.

The district court found Defendant Edwards guilty of Violations 1, 3 and 4. The district court calculated a sentencing range of 46 to 57 months' imprisonment and imposed a 57-month sentence.[3]

## II. DISCUSSION

A district court may revoke a defendant's term of supervised release and impose a prison term if the district court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). Revocation is mandatory, however, if the violation is the possession of a controlled substance. Id. § 3583(g)(1); see also U.S.S.G. § 7B1.3(a)(1) (requiring revocation upon a finding of a Grade A or B violation).[4] We review for abuse of discretion a district court's finding that a defendant violated a term of supervised release. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). Furthermore, we are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

Here, we cannot say the district court's fact findings were clearly erroneous. Based on Detective Rotella's testimony, which the district court credited, for at

---

[3]Defendant Edwards does not appeal his 57-month consecutive sentence.

[4]A controlled substance offense punishable by a prison term of more than one year is a Grade A violation. See U.S.S.G. § 7B1.1(a)(1).

least twenty minutes before police entered and while his cousin Brown remained outside, Defendant Edwards was inside the locked residence alone with a large amount of marijuana strewn about the living room in various stages of being processed for sale. Defendant Edwards did not exit the residence even though police made repeated announcements over the PA for ten minutes that anyone inside the residence should exit with their hands up. When police breached the front door, Defendant Edwards was standing in the living room near the marijuana and drug paraphernalia. While no marijuana was found on Edwards's person, he was carrying a large amount of cash.

These facts are sufficient to support the district court's finding by a preponderance of the evidence that Defendant Edwards was more than a mere visitor and that he had dominion and control over the apartment where the marijuana and paraphernalia were found. See United States v. Faust, 456 F.3d 1342, 1345-46 (11th Cir. 2006) (stating the government can show constructive possession "by either direct or circumstantial evidence and by inferences arising from the surrounding circumstances" that the defendant "maintained dominion or control over the premises" where the drugs are located).[5] These facts also are sufficient to support the district court's finding by a preponderance of the evidence

---

[5]Defendant Edwards's claim that the district court created a new legal test for possession lacks merit. Both the magistrate judge and the district court examined the totality of the circumstances and applied the standard of dominion or control commonly used in constructive possession cases.

11

that Defendant Edwards possessed the marijuana with the intent to distribute it.

See United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989) (stating that an

"[i]ntent to distribute can be proven circumstantially from, among other things,"

the amount of drugs and the presence of implements commonly used to distribute

the drugs).

Although both Defendant Edwards (orally to Pratt) and Brown (in a sworn

written statement to Pratt) indicated that Defendant Edwards was unaware of the

marijuana and was at the apartment only to drop off Brown's children and to use

the bathroom, the district court found these statements unbelievable and

inconsistent with other evidence, including Detective Rotella's testimony and the

photographs of the scene.  See United States v. Rodriguez, 398 F.3d 1291, 1296

(11th Cir. 2005) (explaining that a court's fact-finding based on a credibility

determination "will almost never be clear error").  Defendant Edwards has given us

no cause to disturb the district court's credibility determinations or its weighing of

the evidence.[6]  See United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003)

---

[6]Defendant Edwards argues that the district court improperly found that Edwards gave inconsistent statements to Detective Rotella (that he was asleep in a bedroom in the apartment) and Probation Officer Pratt (that he was using the bathroom in the apartment).  Edwards contends that Detective Rotella's testimony about Edwards's post-arrest statement should not have been admitted because Edwards had invoked his right to silence.  Although the district court noted the inconsistency between the two statements, it did not use the inconsistency to discredit Edwards's statement to Probation Officer Pratt.  Rather, it listed four other reasons that Edwards's statement to Officer Pratt was not believable.  Thus, any alleged error in admitting the post-arrest statement to Detective Rotella was harmless.  See United States v. Arbolaez, 450 F.3d

(explaining that "we allot substantial deference" to the fact finder's credibility determinations and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (internal quotation marks omitted)).

Defendant Edwards complains that the district court gave no weight to Brown's sworn statements even though Federal Rule of Evidence 804(b)(3) "recognizes that such statements are reliable evidence." The fact that Brown's statements may be admissible under Rule 804(b)(3) as an exception to the hearsay rule does not mean the district court must accept those statements as true or give them any particular amount of weight. The district court amply supported its decision to give no weight to Brown's statements.

Contrary to Defendant Edwards's assertion, the district court did not rely on "an impermissible propensity argument to establish that Edwards possessed the marijuana." To support his argument, Defendant Edwards takes out of context some of the district court's comments during the final revocation hearing. When the hearing is considered as a whole, however, it is patently clear that the district court did not do what Edwards claims.

At the district court's final revocation hearing, defense counsel cited cases in which there was insufficient evidence of constructive possession. The district

---

1283, 1292 (11th Cir. 2006) (stating that the admission of a statement obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), is subject to harmless error review).

13

court asked defense counsel whether the cases were distinguishable because those defendants, unlike Edwards, did not have a prior history of drug distribution convictions. Defense counsel candidly agreed and admitted that a prior drug distribution conviction was "one of the factors" courts consider in determining whether sufficient evidence supports a finding that a defendant had the requisite "intent to distribute." The district court then pointed out that: (1) defense counsel's cases were further distinguishable because they were direct appeals of jury findings beyond a reasonable doubt, whereas in Edwards's case the government needed to prove possession with intent to distribute only by a preponderance of the evidence; (2) the district court had already adopted the magistrate judge's finding by a preponderance of the evidence that Edwards constructively possessed the marijuana and paraphernalia (as to Violations 1 and 3); and (3) the only issue remaining (as to Violation 4) was whether that possession was with the requisite "intent to distribute." Then, when the district court later made its finding that Defendant Edwards constructively possessed the marijuana with "intent to distribute" and reviewed the evidence relied on in making that finding, the district court did not mention Edwards's prior convictions at all.

Given that the district court discussed Defendant Edwards's prior convictions only in the context of defense counsel's legal arguments and did not refer to them in making its finding of constructive possession, Edwards has not

14

shown that the district court used the prior convictions as propensity evidence to find that Defendant Edwards possessed the marijuana. To the extent the district court considered the prior convictions at all, it did so only with respect to whether Defendant Edwards had the required intent to distribute the marijuana, which was proper under our precedent. See United States v. Brown, 587 F.3d 1082, 1091 (11th Cir. 2009) ("Prior convictions for drug trafficking are considered highly probative of intent to commit current drug trafficking offenses.").

For all these reasons, there is no clear error in the district court's finding that Defendant Edwards constructively possessed the marijuana and paraphernalia. Accordingly, the district court did not abuse its discretion when it revoked Defendant Edwards's supervised release.

**AFFIRMED.**